UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

ISREAL VELEZ,                                       :
                                                    :
                                Plaintiff,          :
                                                    :        1:17-cv-9871-GHW
            -against-                               :
                                                    :        MEMORANDUM OPINION
CITY OF NEW YORK, NEW YORK CITY                    :           AND ORDER
DEPARTMENT OF CORRECTION, CAPTAIN                   :
SEWER, SHIELD #UNKNOWN,                             :
CORRECTION OFFICER FNU BROWN,                       :
SHIELD #UNKNOWN, CORRECTION                         :
OFFICER FNU MATEO, SHIELD #9169, and               :
CORRECTION OFFICER FNU JACOB, SHIELD:
#18421,                                             :
                                                    :
                                Defendants.  :
-------------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

       Plaintiff Isreal Velez ("Plaintiff" or "Velez") brought this action claiming that in October

2016, while he was a pretrial detainee housed at Rikers Island, he was the victim of a violent attack.

Plaintiff asserts claims against Defendants Captain Robyn Sewer, Correction Officer FNU Brown,

Correction Officer FNU Mateo, and Correction Officer FNU Jacob for failing to prevent the attack,

failing to intervene in the attack, and conspiring to permit the attack and conceal their actions.  He

also asserts *Monell* claims against the City of New York as well as New York common law claims for

negligent hiring, training, and retention.  Defendants Sewer, Mateo, Jacob, and the City of New

York have moved for summary judgment, arguing that Plaintiff has not put forth sufficient evidence

for a jury to find in his favor on any of his claims and that, alternatively, Defendants Mateo, Jacob,

and Sewer are entitled to qualified immunity. For the reasons discussed below, Defendants' motion is GRANTED. [1]

## I. BACKGROUND

The Court views the facts in the light most favorable to the non-moving party. *See Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). Unless otherwise indicated, the following facts are undisputed.

On October 5, 2016, Plaintiff, a pre-trial detainee, was transported from the George R. Vierno Center ("GRVC") on Rikers Island to the Manhattan Mental Health Court. Dkt. No. 45 ("56.1 Stmt.") at ¶¶ 1, 4. While waiting for his scheduled court appearance at the Manhattan Mental Health Court, Plaintiff was placed in a holding cell with other inmates. *Id.* at ¶ 6. One of the inmates placed in the cell with Plaintiff was Daniel Sparber ("Sparber"). *Id.* at ¶ 7. Although Sparber did not speak to Plaintiff or make any physical contact with Plaintiff, Sparber was "pacing up and down . . . like he was plotting" which made Plaintiff feel like he had "problems in that cell." *Id.* at ¶ 8; Deposition of Isreal Velez, Dkt. No. 37-2 ("Velez Dep."), at 75:5-21. Plaintiff also testified that Sparber looked at him with a "menacing stare." Velez Dep. at 83:3-12. Plaintiff had never met Sparber prior to October 5, 2016. 56.1 Stmt. at ¶ 9.

After his court appearance, Plaintiff alerted Correction Officer Mateo to several concerns. At his deposition, Plaintiff testified that he told Officer Mateo that he was thirsty and he needed to use the restroom. Velez Dep. at 84:19-24. Plaintiff also testified that he told Officer Mateo that he felt like his "life [was] in danger in that jail cell," although he did not "get into details" and "didn't point anyone out." *Id.* at 84:22-23, 85:5-8. However, Plaintiff later testified that he did tell Officer

[1] The Court notes that, although this case was filed on December 18, 2017, Correction Officer Brown has not yet been served, nor has Plaintiff requested that a summons be issued for Defendant Brown. Plaintiff has not made any application to the Court for an extension of time to serve Defendant Brown and the period for service expired approximately 16 months ago. Accordingly, the Court dismisses all claims against Defendant Brown without prejudice pursuant to Fed. R. Civ. P. 4(m).

Mateo about a particular inmate who was "pacing up and down," to which Officer Mateo responded, "[Y]es, he's a real bad ass." *Id.* at 89:3-8. Due to these concerns, Plaintiff requested that he be transferred to his own holding cell. *Id.* at 89:11-14. Officer Mateo declined Plaintiff's request and escorted Plaintiff back to his original holding cell. *Id.* at 85:11-4, 88:14-16.

Once Plaintiff was back in his cell, Correction Officer Jacob arrived to provide water to Plaintiff and the other inmates. 56.1 Stmt. at ¶ 15. Plaintiff informed Officer Jacob that he was having problems in the cell and wished to be moved to another cell, gesturing at Sparber. *Id.* However, as Plaintiff went to reach for a cup of water, Sparber simultaneously reached for the same cup. 56.1 Stmt. at ¶ 18. Plaintiff looked at Sparber and asked, "You don't mind, do you?" to which Sparber responded, "Yeah, I mind." Velez Dep. at 101:4-7. Plaintiff put the cup of water up to his mouth. *Id.* at 101:8-9. Sparber then punched Plaintiff on the left side of his face, in front of Officer Jacob. 56.1 Stmt. at ¶ 19.

Plaintiff and Sparber wrestled with each other for fifteen minutes and Sparber eventually bit Plaintiff on the left side of his face. *Id.* at ¶ 20. Plaintiff struck Sparber in the chin and grabbed him by the throat. *Id.* at ¶ 21. As soon as the fight broke out, Officer Jacob repeatedly ordered Sparber to "get off him," but Sparber did not listen to her commands. *Id.* at ¶ 22. Plaintiff also testified that Defendants Brown and Mateo were present outside of the holding cell during the fight, but that he did not know what those officers were doing during the fight. Velez Dep. 106:13-18, 107:10-23. Captain Sewer, who supervised the correction officers at the Manhattan Mental Health Court, testified in her deposition that she ran to the cell once she heard the commotion and ordered the surrounding officers to break up the fight. Deposition of Robyn Sewer, Dkt. No. 42-1 ("Sewer Dep."), at 15:5-15, 24:25-25:12. Captain Sewer helped remove Sparber from the cell "because he was the more aggressive one." *Id.* at 30:4-9.

After the fighting ceased, Captain Sewer interviewed Plaintiff and escorted him to the

medical clinic to treat his wounds.  56.1 Stmt. at ¶ 27.  As a result of the altercation, Plaintiff

suffered from bite marks to his face and scalp, injuries to his head and knees, and aggravation of a

pre-existing toe injury.  Velez Dep. at 128:10-12, 131:13-15, 136:10-139:8.  Plaintiff also claims that

he suffered from depression and other emotional injuries resulting from the attack.  *Id.* at 141:17-19.

Plaintiff waited for five hours after the fight ended before he received medical treatment.  56.1 Stmt.

at ¶ 24.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))).  A

genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the

governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are

irrelevant or unnecessary will not be counted."  *Id.*

The movant bears the initial burden of demonstrating "the absence of a genuine issue of

material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence

sufficient to satisfy every element of the claim."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir.

2008) (citing *Celotex*, 477 U.S. at 323).  To defeat a motion for summary judgment, the non-movant

"must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)).

"The mere existence of a scintilla of evidence in support of the [non-movant's] position will be

insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586 (citations omitted), and she "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236 (internal quotation marks and citation omitted). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted); *see also Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted).

## III.   DISCUSSION

### A.  The Individual Defendants are Entitled to Summary Judgment on Plaintiff's Failure to Protect Claims

In general, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)) (internal alteration omitted). However, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A claim that an officer failed to protect an inmate from attack or failed to intervene to stop an attack rises to the level of a constitutional violation where the officer acted with "deliberate indifference to a substantial risk of

serious harm to an inmate.'" *Taylor v. City of New York*, No. 16 CIV. 7857 (NRB), 2018 WL 1737626, at *11 (S.D.N.Y. Mar. 27, 2018) (quoting *Farmer*, 511 U.S. at 828).

When such claims are made by pretrial detainees, they are evaluated under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, as "pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—nether cruelly and unusually nor otherwise." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (internal alteration and quotation omitted). "This means that a pretrial detainee must satisfy two prongs to prove a claim, an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong'—perhaps better classified as a '*mens rea* prong' or 'mental element prong'—showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id.* at 29. Following the Second Circuit's decision in *Darnell*, the second prong of a pre-trial detainee's claim is measured by an objective standard: "[T]he pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Taylor*, 2018 WL 1737626, at *11 (quoting *Darnell*, 849 F.3d at 35).

However, even if the pretrial detainee satisfies both prongs of his failure to protect claim, "the doctrine of qualified immunity will shield [a state officer] from liability for damages if his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018). "[T]he right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotations omitted). To determine whether a right is clearly established,

courts must consider "whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011).

Qualified immunity "may also be available when, even though plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the action complained of, it was nonetheless 'objectively reasonable' for the defendant official 'to believe that his acts did not violate those rights.'" *Rodriguez v. Phillips*, 66 F.3d 470, 475 (2d Cir. 1995). "Thus, if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendant's conduct under the circumstances, summary judgment is appropriate." *Dublin v. New York City Law Dept.*, No. 10 Civ. 2971 (LAP), 2012 WL 4471306 at *6 (S.D.N.Y. Sept. 26, 2012). In evaluating a qualified immunity defense, courts are not required to begin "by deciding whether a constitutional right was violated," but are allowed to "exercise their sound discretion" in determining whether to first consider whether qualified immunity bars the claim even if a constitutional right was violated. *Lara-Grimaldi v. Cty. of Putnam*, No. 17-CV-622 (KMK), 2018 WL 1626348, at *9 (S.D.N.Y. Mar. 29, 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

With respect to Defendants Jacob and Sewer, Plaintiff has not put forth sufficient evidence for a jury to find that Defendants intentionally or recklessly failed to prevent the attack. To the contrary, it is clear from the evidence that neither Defendant had any opportunity to prevent the attack. Although Plaintiff argues in his briefing that Officer Jacob "blatantly ignored [his] plea for protection," Dkt. No. 44 at 14, that argument is belied by his own testimony, which clearly states that he was assaulted by Sparber *immediately* after he told Officer Jacob about his desire to be moved to a different holding cell. Velez Dep. at 87:15-20 ("I said look, I want to go to another cell, I got

problems in the cell. . . . [a]nd that's when he attacked me right in front of her."). Since the assault happened immediately after Plaintiff's comment, Officer Jacob had no reasonable opportunity to intervene. *See, e.g.*, *Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 336 (S.D.N.Y. 2015) ("[I]n the context of an altercation, an inmate must show that . . . the officer had a realistic opportunity to intervene and prevent the harm."). Furthermore, the parties do not dispute that Officer Sewer was not present at the holding cell until after the fight had already begun.[2] Accordingly, no reasonable jury could find that Officer Jacob or Officer Sewer is liable for failing to prevent the attack.

Furthermore, the Court concludes that Defendant Mateo is entitled to qualified immunity with respect to any claim that he failed to prevent Sparber's attack. Plaintiff's vague and unsubstantiated concerns about his safety which he expressed to Officer Mateo were not sufficient to make clear to a reasonable officer that preventative action was constitutionally required. Indeed, a number of courts in this district have found that an inmate informing an officer about a nebulous or untethered fear does not put an officer on notice that the inmate is at risk of attack. *See e.g., Haughton v. Clinton*, No. 15-CV-1160 (JPO), 2015 WL 9244398 at *2 (S.D.N.Y. Dec. 17, 2015) (granting defendant's motion to dismiss failure to protect claim when plaintiff only told the correction officer that he "feared for [his] safety," because that statement was "too conclusory for [the officer] to have inferred the existence of such a substantial risk"); *Desulma v. City of New York*, No. 98CIV.2078(RMB)(RLE), 2001 WL 798002, at *7 (S.D.N.Y. July 6, 2001) (although prison official knew that the plaintiff feared certain inmates and had requested protective measures, "given the lack of prior history of violence between [plaintiff] and [his attackers,]" there was no reason for him "to infer the existence of a threat of harm"); *El-Shabazz v. Wangenstein*, No. 92 CIV. 7291 (LBS), 1995 WL 489686, at *9 (S.D.N.Y. Aug. 15, 1995) (dismissing failure to protect claim when "[a]ll plaintiff ever told DOCS officials was that he had a 'funny feeling' and that he '[felt] like something

---

[2] In fact, Plaintiff's summary judgment briefing does not mention Defendant Sewer even once.

[was] going to happen'"); [3] *see also Rivera v. New York*, No. 96 Civ. 7697(RWS), 1999 WL 13240, at *9

(S.D.N.Y. Jan. 12, 1999) ("[C]ommunicating vague concerns of future assault by unknown

individuals [is] not sufficient to impose liability on an officer who fails to protect an inmate.").

Those cases which have found officers potentially liable for failing to prevent an attack involved

clear and specific threats against an inmate. *See, e.g.*, *Rogers v. Salius*, No. 3:16-CV-1299 (JCH), 2017

WL 1370695, at *5 (D. Conn. Apr. 13, 2017) (denying motion to dismiss where plaintiff alleged that

prison officials had "intercepted a note putting a hit on [plaintiff]"); *Henry v. Cty. of Nassau*, 13-cv-

7427 (SJF)(ARL), 2015 WL 2337393 at *6 (E.D.N.Y. May 13, 2015) (denying motion to dismiss as

to prison officials "alleged to have been personally involved" in the decision to place plaintiff in

general population rather than protective custody after credible threats of gang retaliation were made

against him).

Here, a jury could find that Plaintiff informed Officer Mateo that there was an inmate pacing

up and down in the holding cell and that Plaintiff was concerned for his safety, but there is no

evidence that Plaintiff provided any details to Officer Mateo about why he felt unsafe—indeed, it is

clear that Sparber did not actually make any specific threats towards Plaintiff. Even if Officer Mateo

was aware that Sparber had some propensity towards violence—a proposition arguably supported

by Officer Mateo's statement that Sparber was "a real bad ass"—there is no evidence in this record

that Officer Mateo was aware or should have been aware of a specific risk to Plaintiff. *See Gilmore v.*

*Rivera,* No. 13 Civ. 6955(RWS), 2014 WL 1998227 at *3 (S.D.N.Y. May 14, 2014) (holding that even

though officers knew an inmate was a "serial feces thrower," there was nothing to suggest that the

officers "would have known that plaintiff himself was at risk" of being hit). Given the state of the

---

[3] Although these cases were decided before the Second Circuit's decision in *Darnell*, their analysis survives that decision because the outcome of each case was not based on a conclusion that the officer was not subjectively aware of a risk to the inmate. Instead, in each case, the court had direct evidence of what the officer knew—*i.e.*, the concerns communicated to the officer by the inmate—and then addressed the issue of whether, based on that actual knowledge, the officer should have been aware of a substantial risk of serious harm to the inmate.

law in this Circuit, the Court concludes that reasonable officers would disagree about the legality of Officer Mateo's decision to return Plaintiff to the holding cell and, accordingly, that Defendant Mateo is entitled to qualified immunity.

To the extent that Plaintiff argues that Defendants are liable for failing to intervene during the attack—a claim which he included in his complaint, but did not address in his summary judgment briefing—Plaintiff has failed to adduce sufficient evidence to support this theory of liability. The only evidence in the record which would even begin to suggest that the officers acted unreasonably once the altercation began is the fact that the fight lasted for fifteen minutes before any officers physically entered the holding cell. But the law in this Circuit is clear that officers are under no obligation to put their own safety at risk by intervening in inmate fights. *See Brown v. Correction Officer Shon Chambers*, No. 92 CIV. 7622 (LAP), 1995 WL 234681, at *4 (S.D.N.Y. Apr. 20, 1995), *aff'd sub nom.*, 99 F.3d 402 (2d Cir. 1995) ("[Plaintiff's] argument that the correction officers should have intervened to stop the fight, for example, is not persuasive. Prison officials have no duty to put their own safety at risk to stop an altercation between inmates."); *see also Blaylock v. Borden*, 547 F. Supp. 2d 305, 312 (S.D.N.Y. 2008), *aff'd*, 363 F. App'x 786 (2d Cir. 2010) ("[T]he assertion that [defendant] acted improperly by calling for officer assistance instead of jumping into the fight himself is itself unreasonable."). Because Plaintiff has put forth no evidence that Defendants acted unreasonably after the attack began, Defendants are entitled to summary judgment on Plaintiff's failure to intervene claims.

## B. The Individual Defendants are Entitled to Summary Judgment on Plaintiff's Conspiracy Claim

"To state a claim for conspiracy to commit a civil rights deprivation under 42 U.S.C. § 1985, a plaintiff must allege: (1) a conspiracy; (2) to deprive directly or indirectly any person of equal protection of the laws, or of equal privileges and immunities; and (3) an act in furtherance of the conspiracy; (4) whereby his person or property is injured or he is deprived of any right of a U.S.

citizen." *See Poulos v. City of New York*, No. 14CV3023-LTS-HBP, 2015 WL 5707496, at *7

(S.D.N.Y. Sept. 29, 2015) (quoting *Mian v. Donaldson, Lufkin & Sec. Corp.*, 7 F.3d 1085, 1087-88 (2d

Cir. 1993). "In order to sustain such a claim, a plaintiff must 'provide some factual basis supporting

a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve

the unlawful end.'" *Id.* (citing *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003)).

Defendants argue that Plaintiff has put forth no evidence to support his conspiracy claim.

The Court agrees. Although the record suggests that Defendants may have interacted with each

other to some degree around the time of the attack, there is absolutely no evidence in the record

which suggests that they entered into an agreement to deprive Plaintiff of his civil rights.

Defendants' motion for summary judgment on Plaintiff's conspiracy claim is granted.[4]

### C. The City of New York is Entitled to Summary Judgment on Plaintiff's *Monell* Claims and State Law Claims for Negligent Hiring, Training, and Retention

Plaintiff also asserts *Monell* claims against the City of New York based on the City's failure to

adequately train, discipline and supervise the correction officers and New York common law claims

for negligent hiring, training, and retention. The Court agrees with Defendants that summary

judgment on these claims is appropriate.[5]

To prevail on a *Monell* claim for failure to supervise, Plaintiff "must establish [the City's]

deliberate indifference by showing that 'the need for more or better supervision to protect against

constitutional violations was obvious,' but that [the City] made 'no meaningful attempt' to forestall

---

[4] Defendants also argue that Plaintiff's claims are barred by the intra-corporate conspiracy doctrine. However, because the Court finds that Plaintiff has not put forth sufficient evidence to support his conspiracy claim, the Court need not address the parties' arguments regarding the applicability of the intra-corporate conspiracy doctrine in these circumstances.

[5] The Court notes that Plaintiff's summary judgment briefing does not mention his municipal liability claims and that, as a result, Defendants have urged the Court to conclude that those claims are abandoned. However, Plaintiff's failure to oppose Defendants' motion on these claims does not in itself justify the granting of summary judgment. "[W]here the non-moving party 'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)).

or prevent the unconstitutional conduct." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 (2d Cir. 2004). For his *Monell* claims for inadequate training, Plaintiff must "establish not only that the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference, but [must] also . . . identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Id.* at 129. Plaintiff has made no attempt to adduce any evidence which would support a claim for *Monell* liability under either of these theories and thus summary judgment is appropriate.

With regard to Plaintiff's state law claims for negligent hiring, training, and retention, the parties agree that "[d]uring the events at issue, the individual defendants were acting in their capacity as agents, servants and employees of the City of New York and the DOC." 56.1 Stmt. at ¶ 29. That fact alone is sufficient to defeat Plaintiff's claim, because "New York law does not permit a claim for negligent hiring, training, retention or supervision where the defendants act in the scope of their employment." *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 521 (S.D.N.Y.), *on reconsideration in part*, 133 F. Supp. 3d 563 (S.D.N.Y. 2015). Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's municipal liability claims.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 36, to enter judgment for Defendants, and to close this case.

SO ORDERED.

Dated: August 1, 2019
New York, New York

_____
GREGORY H. WOODS
United States District Judge